# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

SHERYL D. OSBORN,

      Plaintiff,

v.                No.04-0729-CV-W-DW

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

      Defendant.

**ORDER**

Before the Court are the parties' cross motions for summary judgment (Docs. 27 and 37). Both motions have been fully briefed, including supplemental briefing regarding the applicable legal theories (Doc. 45). Plaintiff seeks summary judgment on Count I of her complaint based on waiver—that Defendant *waived* its right to deny payment of the proceeds of the life insurance policy to the beneficiary where the insured's failure to pay premiums resulted in a lapse of the policy. Count II asserts that Defendant is *estopped* from asserting the same defense. Defendant argues that the undisputed facts of this case do not constitute waiver or estoppel and it seeks summary judgment on Counts I and II. For the following reasons, Plaintiff's motion for summary judgment on Count I is denied and Defendant's motion for summary judgment on Counts I and II is granted.

I. Background

Defendant issued a term life insurance policy, No. 77878429, ("Policy") to Brad Draper ("Draper" or "Insured") in the amount of $1,000,000.00 on February 1, 1998. (Def.'s Suggestions in Opp'n to Pl.'s Statement of Uncontroverted Facts, Doc. 36 at ¶ 1.) On November 1, 2001, Defendant reversed Mr. Draper's premium payment for insufficient funds. (Aff. of Frederick Jacoby,

App. to Def.'s M. for Summ. J., Ex. B, ¶ 18.) Defendant sent Draper an offer of reinstatement that stated the policy had lapsed, but could be reinstated subject to various conditions. Id. at ¶ 3. These conditions required the payment of all premiums due "before the death of the insured." Id. Mr. Draper exhibited a pattern of payment of premiums after the due date but within the grace period. Id. at ¶ 7-20. Additionally, on six occasions Mr. Draper failed to pay the premium within the 31 day grace period and the policy lapsed. Id. at ¶ 7, 8, 14, 17, 19, and 20. On one of these occasions, the November 2001 premium, Mr. Draper applied for reinstatement on February 4, 2002, but only submitted a partial payment of premiums due. Id. at ¶ 18. By letters dated February 13, 2002 and February 15, 2002, Defendant notified Draper that a payment of $668.00 (the sum of November 2001 and February 2002 premiums) was necessary for consideration of reinstatement of the Policy through May 1, 2002. Id. Mr. Draper then submitted full payment and Defendant reinstated the policy on February 17, 2002. Id. Mr. Draper again failed to make a timely premium payment on August 1, 2002 and also failed to make a payment within the 31-day grace period that ended on September 1, 2002. Id. at ¶ 20. Draper died on September 10, 2002 and Plaintiff was the beneficiary of the policy at the time of Brad Draper's death. (Def.'s Suggestions in Opp'n to Pl.'s Statement of Uncontroverted Facts, Doc. 36 at ¶ 3.)

Plaintiff's husband, James Osborn, contacted Defendant by telephone on September 18, 2002, to make a claim on the policy. (Stipulated Tr., Tape #1, p. 1.) James Osborn spoke with Jeannie Lepley, a claims representative for Defendant. Id. at p. 4. Jeannie Lepley stated that she would fax James Osborn a letter and claim form, which was to be completed and returned to Defendant along with Brad Draper's death certificate and policy. Id. at p. 7. Approximately one hour after this discussion, James Osborn contacted Defendant, again by telephone, stating he had

discovered a Notice of Premium Due and wanted to know if the policy was still in force. Id. at p. 12. During this second call, Deborah Trent told James Osborn three times that the policy was still in force and that Defendant would send a claim form to him. Id. at 12-14. When asked by Mr. Osborn when the Policy would terminate, Ms. Trent responded: "I really don't have that information I can get you over to the claims unit they can, they can trail that for you." Id. at p.14.

James Osborn did not receive the claim forms on September 18, 2002, and telephoned Defendant again on September 19, 2002 and spoke with Charlene Clay. Id. at p. 17. Ms. Clay stated: "the grace period on the policy is between 61 days so I'm thinking that the policy might be ok. Because [of] right now we're showing that lapsing[,] the policy lapsed with no value." Id. at p.19. After speaking with her supervisor, Charlene Clay then told James Osborn that Brad Draper had died nine days before the policy had lapsed and that Defendant would honor the policy. Id.

Sheryl Osborn completed and signed a Death Benefit Claim Form on September 19, 2002 and mailed the claim form and accompanying documents to Defendant at a cost of $19.95. (Def.'s Suggestions in Opp'n to Pl.'s Statement of Uncontroverted Facts, Doc. 36 at ¶ 12 and 13.) Defendant notified Sheryl Osborn of receipt by a letter dated September 25, 2002. Id. ¶ 14. In a letter from Ron Cody dated October 1, 2002, Defendant stated that no benefit would be paid on the policy because it had lapsed for failure to pay premium. Id. ¶ 15.

II.  Summary Judgment

    A.  Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

3

is entitled to judgment as a matter of law. In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the adverse party and allows the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Inland Oil and Transp. Co. v. United States, 600 F.2d 725, 727-28 (8th Cir. 1979). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the evidence favoring the nonmoving party must be more than "merely colorable." Id. at 249-50.

Ordinarily, waiver and estoppel involve issues of fact which must go to the jury. This is appropriate because typically the existence of an elemental fact is the subject of controversy or must be inferred from other facts or circumstances. However, the jury has no role when the facts are admitted by the parties and "there is no room for a reasonable divergence of opinion with reference to the conclusion to be drawn from them." Myers v. Maryland Casualty Co., 101 S.W. 124 (Mo. App. 1907); see also Brotherhood of Sleeping Car Porters v. Pullman Co., 200 F.2d 160, 164 (7th Cir. 1953)("Whether or not the facts in question, if proved, amount to or constitute a waiver is a question of law, which the court must decide."). As noted by the parties, the facts in this case are essentially undisputed in that there are transcripts of the telephone conversations at issue and the transcripts have been stipulated to by the parties. Because the underlying facts are not in dispute, this case is especially appropriate for summary judgment.

B. Missouri Insurance Law

The analysis of Plaintiff's claims must begin by recognizing Missouri's preference for estoppel over waiver as a basis to bar an insurer's forfeiture defense. The Missouri Supreme Court

4

stated in Brown: "[A]n examination of the cases shows estoppel, with some element of unfairness, lack of notice, or other detriment to the insured, rather than voluntary waiver without such element, is the preferred theory when the insurer elects a policy defense."[1] Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384, 388 (Mo. 1989)(citing Macalco Inc. v. Gulf Ins. Co., 550 S.W.2d 883, 891-92 (Mo. App. 1977)). The court went on to state, however, that this preference does not preclude the application of waiver when there is "either (1) an express waiver by the insurer or (2) conduct which unequivocally shows a purpose by the insurer to relinquish a contractual right." Id.

Plaintiff argues that another legal principle should inform the Court's decision, namely that the law abhors forfeitures and will seize upon slight cause to find a waiver of or an estoppel to assert a basis for forfeiture. See Bartleman v. Humprey, 441 S.W.2d 335 (Mo. 1969); State ex rel. Shelter Mut. Ins. Co. v. Crouch, 714 S.W.2d 827 (Mo. App. 1986). However, recent Missouri cases indicate that the doctrine has been abandoned and Brown is the controlling standard. See Rooks v. Lincoln Cty. Farmers Fire & Lightning Mut. Ins. Co., 830 S.W.2d 507 (Mo. App. E.D. 1992)(following Brown); Hite v. Am. Family Mut. Ins. Co., 815 S.W.2d 19 (Mo. App. 1991)(same); Depriest v. State Farm Fire and Cas. Co., 779 S.W.2d 347 (Mo. App. 1992)(same). Although the doctrine may still carry force with regard to estoppel, see State ex rel. Continental Ins. Co. of City of New York v. Becker, Mo., 77 S.W.2d 100, 105 (Mo. 1934)(in insurance cases, intention to waive must plainly appear or else the acts or conduct relied upon must involve some element of estoppel), it does not appear that Missouri courts would apply the "law abhors forfeitures" principle to find waiver in the absence of full knowledge of the facts giving rise to the forfeiture defense and an unequivocal

---

[1] Brown is primarily concerned with the detriment imposed by allowing an insurer to announce one defense and subsequently switch to a different theory. The Court reads the standards enunciated in Brown to apply with equal force to the facts of this case.

5

intention to relinquish the defense; neither will this Court.

    C.    <u>Count I: Waiver</u>

The parties in this case do not dispute that Mr. Draper's policy had lapsed at the time of his death. The dispute lies in determining the legal effect of various statements by Defendant's customer and claims support personnel. Plaintiff asserts that Defendant expressly waived the defense of forfeiture of the policy for nonpayment of premium when its claim personnel told James Osborn that the policy would be honored. (Pl.'s Reply Memorandum, Doc. 45, p. 2.) Plaintiff also claims an implied waiver of this defense when Defendant sent claim forms to the plaintiff with instructions to complete the proof of loss form and provide the insurance policy and death certificate.

As a preliminary matter, Defendant argues that under the terms of the policy only an officer could make changes to the terms of the policy and therefore the customer support or claims processing personnel lack authority to bind Defendant regarding the waiver of any defenses. Under Missouri law, an insurance company is bound by the acts of an agent acting within the scope of his apparent authority, or within the powers which it held out the agent as possessing, unless the limitations upon the agent's powers are known by or brought to the notice of the insured. <u>Voss v. American Mut. Liability Ins. Co.</u>, 341 S.W.2d 270, 276 (Mo. App. 1960)(<u>citations omitted</u>). The Court finds that Missouri law allows a claims agent to bind the company with regard to waiver or estoppel of defenses and this argument is not dispositive on the either issue.

Waiver is the intentional relinquishment of a known right. <u>Brown</u>, 776 S.W.2d at 386. Under Missouri law, to establish waiver of the defense of forfeiture, Plaintiff must establish that Defendant (1) had knowledge of the facts giving rise to the defense and (2) intentionally relinquished the right to assert the defense. <u>See</u> <u>Acetylene Gas Company v. Thomas R. Oliver</u>, 939 S.W.2d 404,

6

409 (Mo. App.1996)("To rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible."); Pasley v. Marshall, 305 S.W.2d 879, 882 (Mo. App. 1957)("One is not bound by a waiver of his rights, unless such waiver is distinctly made with full knowledge of the rights which he intends to waive, and the fact that he knows his rights, and intends to waive them must plainly appear, and the burden is on him who claims a waiver to prove it."). An express waiver results from an oral or written declaration of a waiver of a known right. An implied waiver results from an act which clearly and unequivocally shows a purpose to relinquish a known right. Prejudice to the insured is not a requirement of waiver. See Brown, 776 S.W.2d at 388.

After a careful reading of the stipulated transcripts of the calls between Mr. Osborn and Defendant's claims personnel, the Court finds no waiver in this case. First, the transcript of the conversation between Mr. Osborn and Jeannie Lepley on September 18, 2002, shows no evidence of either knowledge of all the facts related to status of Mr. Draper's policy or an unequivocal statement indicating Defendant's intent to honor the policy despite its lapse for nonpayment of premiums. At no time during this call is the issue of the lapse of the policy mentioned by either Ms. Lepley or Mr. Osborn. Ms. Lepley's concern was merely to begin the claim process by sending Mr. Osborn the necessary materials to make a claim on the policy.

After finding a Notice of Premium Due in Mr. Draper's effects, Mr. Osborn made a second call on September 18, 2002 and spoke with Deborah Trent. Although Ms. Trent made statements that the policy "was in force," she ultimately qualified those statements by saying that she did not have information about when the policy terminated and would have to transfer Mr. Osborn to the claims department to inquire into specific details relating to the status of the policy. Mr. Osborn did

7

not avail himself of this option.

Apparently after discovering a Reinstatement Notice, Mr. Osborn made a third call on September 19, 2002 and spoke with Charlene Clay. In that call, Ms. Clay states the grace period as 61 days[2] and opines that the "policy might be ok." After getting off the phone to talk with a supervisor, Ms. Clay returns to the line and tells Mr. Osborn "we still are going to honor that policy." She goes on to state "[the decedent] passed away nine days *before* the policy actually lapsed." (Stipulate Tr. Call #1, p. 19.)(emphasis added) Thus, rather than a statement of the Defendant's intention to honor the policy in spite of it having lapsed, the exchange demonstrates that Ms. Clay did not actually have all the facts relating to the status of the policy and only expressed an intention to honor a policy that *had not yet* lapsed.

Finally, on October 4, 2002, Plaintiff received a letter from Ron Cady denying her claim and informing her that the policy had in fact lapsed and had no value. This statement followed Defendant's timely review of the claim and was based upon a review of the policy, death certificate and the claim form completed by Plaintiff.

The Court notes that by focusing on portions of the transcript and emphasizing isolated statements, a jury could determine that Defendant had knowledge of the facts giving rise to the defense of forfeiture and intended to waive the assertion of that defense. However, the Court finds that the transcript, *taken as a whole*, fails to demonstrate either that Defendant was fully aware of

---

[2] The grace period is 31 days and not 61 days as stated by Ms. Clay. Evidently Ms. Clay is referring to the combined time period after the premium was due that an insured has an opportunity to make payment and either keep the policy active or restore a lapsed policy, i.e. the sum of the Grace Period and the duration of the Offer to Reinstate. (See Affidavit of Frederick Jacoby, Doc. 38-2, ¶ 2 and 3.)

8

the facts giving rise to the lapse defense, or that Defendant made an unequivocal expression of an intent to honor the policy and pay the benefit to Plaintiff *in spite of the availability of such a defense*.

The remaining question on the express waiver issue is whether mistake establishes a basis to be excused from waiver. Plaintiff argues that under Missouri law ignorance or mistake is no defense to a waiver. Garvin v. Union Mut. Life Ins. Co., 79 S.W.2d 496, 503 (Mo. App. 1935). However, a close reading of this case and the authorities upon which relies, and in light of the Brown case, the Court concludes this principle is applicable to claims based upon estoppel—not waiver. Citing to Keys v. National Council, Knights & Ladies of Security, 161 S.W. 345 (Mo. App. 1913), the Garvin court directs that "[a] waiver of forfeiture may be inferred when the insurer, after knowledge of the act of forfeiture, requires the assured, by virtue of the requirements in the policy, to do some act or incur some expense." Keys, 161 S.W. at 348. The court goes on to state: "If the company ought to have known of the facts, or with proper attention to its own business would have been apprised of them, it has no right to set up its ignorance as an excuse." Keys, 161 S.W. at 348. However, after Brown, the Court finds that Missouri law has drawn clear lines of demarcation between the doctrines of waiver and estoppel and if plaintiffs are unable to establish the required elements of waiver they must instead rely on an estoppel theory to bar an insurer's assertion of the forfeiture defense. Brown, 776 S.W.2d at 388 ( "[t]o the extent that we rely on the clear definitions of estoppel and waiver developed by the law, much of the mist of confusion [generated by the cases] will lift.").

Plaintiff also argues that Defendant impliedly waived its forfeiture defense by sending the Plaintiff the forms necessary to bring a claim. Again relying on the standards provided in Brown, the Court finds that this conduct does not rise to an unequivocal expression of an intent to waive the

9

defense and honor a lapsed policy. In the insurance society we live in, the mere distribution of forms to establish proof of death of the insured, even while the policy was lapsed and not in effect, cannot reasonably be inferred that the insurer intended to waive the payment of the premium and the lapsing of the policy.

Therefore, based upon the stipulated facts in the record there is no genuine issue of material fact as to any element of waiver of the defense of forfeiture and the Defendant is entitled to judgment as a matter of law. Accordingly, the Court grants summary judgment on Count I in favor of Defendant and against Plaintiff.

### D. Count II: Estoppel

Generally, estoppel is distinguished from waiver by the absence of the requirement of an intentional relinquishment of a known right and the presence of reliance on the part of the third party. The elements of estoppel are (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act. Brown, 776 S.W.2d at 388 (citations omitted).

In Brown, the Missouri Supreme Court reaffirmed that reliance is the key when plaintiffs seek to bar an insurer's assertion of the forfeiture defense under a theory of estoppel. Two types of reliance have emerged from the Missouri case law: (1) reliance arising from misleading or deceptive acts or conduct, see Missouri Ins. Guar. Ass'n v. Wal-Mart, 811 S.W.2d 28, 34 (Mo. App. 1991)( "One cannot set up another's act or conduct as the ground of an estoppel unless the one claiming it

10

Case 4:04-cv-00729-DW   Document 46   Filed 10/04/05   Page 10 of 13

was actually misled or deceived by such act or conduct."); or (2) expense or trouble incurred by the third party deriving from the acts or conduct of the insurer, see Shearlock v. Mutual Life Ins. Co., 182 S.W. 89, 91 (Mo. App. 1983)(when the insurer, "in any negotiations or transactions with the insured, after knowledge of the forfeiture, requires the insured, by virtue thereof, to do some act or incur some trouble or expense, the forfeiture is, as matter of law, waived[3]"). However, in either case the reliance must be actual, Missouri Ins. Guar. Ass'n, 811 S.W.2d at 28, and reasonable. Van Kampen v. Kauffman, 685 S.W.2d 619 (Mo. App. 1985).

Plaintiff has not advanced any facts that she was misled or deceived by Defendant's conduct. Instead, Plaintiff argues that the payment of $19.95 to submit the claim application, insurance policy and death certificate constitutes her change in position and reliance. This argument is without merit.

The case law establishes that the expense must be significant, and the mere submission of a proof of loss form to an insured or beneficiary without a detrimental change in the beneficiary's position does not give rise to estoppel. See e.g., Orr v. Mutual Life Ins. Co. of New York, 64 F.2d 561, 565 (8th Cir. 1933)(applying Missouri law)(estoppel does not arise simply because appellant has been put to the trouble and some expense of establishing proof of disability that would have resulted in any case); see also Brown, 776 S.W.2d at 388 (to the extent that Missouri cases say "that the mere trouble and expense of bringing suit is sufficient prejudice to support estoppel in all cases, they are incorrect"). Although Missouri law has not clearly defined how much trouble or expense is necessary to be "significant," the Court finds that Plaintiff's effort and expense in this case— to submit the claim on the policy—is simply not significant under any standard and that no other facts

---

[3] While the court in Shearlock used the word "waiver," the requirement of reliance defines a claim founded upon the doctrine of estoppel as defined in Brown.

11

exist in the record to support a determination that she relied to her detriment or otherwise changed her position "on the faith" of statements by the defendant's agents.

Plaintiff also argues that Defendant's past conduct with the insured constitutes an estoppel. Missouri case law is fairly clear that a basis exists for estoppel when an insurer accepts a premium and fails to deny liability or return the premium. See generally Schnatzmeyer v. Nat'l. Life Ins. Co., 791 S.W.2d 815 (Mo. App. 1990); Miles v. Iowa Nat'l. Mut. Ins. Co., 606 S.W.2d 444 (Mo. App. 1980). However, when the policy or notice of premium due contains language that makes renewal or continuation of the policy effective only upon payment of the premium, the language controls. See Stone v. M.F.A. Mut. Ins. Co., 663 S.W.2d 774 (Mo. App. 1983).

In the present action, Plaintiff argues that Defendant's prior conduct of allowing Mr. Draper to make late payments and revive his lapsed policy constitutes an estoppel to terminate the policy for failure to pay the quarterly premium due August 1, 2002. While it is true that Defendant allowed the deceased to revive his policy in the past, it was conditioned upon payment of premiums due. In the case of the February 1, 2002 premium, Defendant demanded *full* payment of premiums in arrears and refused to reinstate on a partial payment. Whatever flexibility Defendant may have demonstrated with regard to timely payment of premiums by the insured, at all times Defendant acted in conformity with its written policy regarding grace periods and reinstatements and did not allow the reinstatement of Mr. Draper's policy without strict adherence to the requirements specified therein. In the case of the August 1, 2002 premium, unlike previous occasions, the deceased failed to respond to either Defendant's Notice of Premium Due or the Offer to Reinstate after the Policy had lapsed for non-payment. Furthermore, the language of the Offer to Reinstate was explicit—the policy would not be reinstated until receipt of the amount owing on the premium due and that the

12

payment must be made *while the insured was alive*. The record in this case fails to establish the elements of estoppel under Missouri law and therefore summary judgment on Count II in favor of Defendant is appropriate.

III.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment on Counts I and II is GRANTED and Plaintiff's motion for summary judgment on Count I is DENIED.

IT IS SO ORDERED.

/s/ DEAN WHIPPLE
Dean Whipple
United States District Court

Date:   October 4, 2005